IN THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v | : | Crim. No 08-cr-00057-16 (CKK) |
| | : | |
| AURELIO CANO FLORES | : | |

COUNSEL'S MOTION TO WITHDRAW, OR IN THE ALTERNATIVE, TO APPOINT
COUNSEL UNDER THE CRIMINAL JUSTICE ACT.

Undersigned Counsel for Defendant Aurelio Cano Flores respectfully requests
that this Court either (1) permit him to withdraw or (2) appoint him under the Criminal
Justice Act, on the grounds that Defendant's family cannot comply with their fee
agreement with counsel. Defendant consents to the filing of this Motion, but urges the
Court to appoint counsel rather than permit him to withdraw. As grounds therefore
Counsel states:

1. Defendant, a citizen of Mexico, who does not speak, read or write English, is
charged as an alleged member of the Mexican Gulf Cartel with a conspiracy to import
large quantities of cocaine and marijuana from Mexico in to the United States. Trial is
set for October 9, 2012. A status hearing was last held on June 25, 2012; the next status
hearing is set for August 6, 2012.

2. Defendant was initially represented by retained counsel from Texas who was
not a member of the bar of this Court. In the interim, the Court appointed Ms. Heather
Shaner, Esq., pursuant to Criminal Justice Act, 18 U.S.C. § 3006A (hereinafter the CJA).

Defendant and his family grew disenchanted with the initial retained counsel and sought to engage undersigned counsel.

3. Defendant was listed on the Federal Narcotic Kingpin list maintained by the Department of the Treasury. Counsel and Defendant's wife negotiated an agreement whereby an initial fee would be paid for counsel's time in investigating the case, reviewing discovery, and meeting with Defendant to explain the case and the United States criminal justice system, as well as exploring any interest he might have in cooperating with the government.  It was expected that the initial fee would last until Defendant was ready to decide how he wanted to proceed. It was also understood that, if Defendant wanted to go to trial, counsel would quote an additional fee, which would be determined by the complexity of the case as revealed by counsel's investigation and the discovery provided.

4. Although the agreement provided that counsel would not enter his appearance until after a license had been received from the Department of the Treasury and the initial retainer paid, in reality, in order to keep the case moving, counsel entered his appearance on October 27, 2011 before either of those steps happened. Although counsel received the required license, payment of the initial retainer proved to be difficult for the family. The money came in slowly; Defendant's family, however, demonstrated their good faith by keeping in contact with counsel and his interpreter. In turn, counsel continued to work zealously on the case.

5. Eventually, Defendant opted not to cooperate with the government and a trial date was set. The government estimated a 3 to 4 week trial. The government had also

provided counsel with extensive discovery, although there were and remain issues in regard to that. Counsel quoted the family a substantial fee, which would cover his expected work, as well as that of those assisting him, interpreters, translators, and a second chair specializing in complex litigation technology issues.

6. After time passed with no word from the family, counsel explained to Defendant that he really needed the family to be honest about their ability to pay the fee; counsel explained that he would have to file the instant motion if they could not. Because it was a matter beyond Defendant's control and because counsel believed that family was trying, he agreed that as an alternative to withdrawing, he would consider appointment pursuant to the CJA. On August 2, 2012, Defendant informed counsel that his family was not going to be able to pay his fee for the trial.[1]  Counsel promptly filed the instant Motion.

7. <u>Withdrawal:</u> District of Columbia Rule of Professional Responsibility 1.16 (b)(3) permits counsel to move to withdraw if a client does not satisfy its obligations to counsel, in this case, paying the agreed upon additional fee. To prevent abuses, the local rules of this court and the Rules of Professional Responsibility require permission of the Court to withdraw. Counsel is aware that some judges may adhere to the policy that an attorney should get all of the fees up front and once in a case must stay there. Such a policy fails to take into account the recent decision of the District of Columbia Court of Appeals in *In re Mance,* 980 A.2d 1196 (D.C. 2009).

---

[1] The family is apparently going to try to compensate counsel and his defense team for the time spent working on the case between quoting the fee and this Court's decision counsel motion to withdraw, but counsel has not received that money as of the filing of this Motion.

8. In *Mance,* the Court of Appeals held that, for attorneys licensed in the District of Columbia, a flat fee was not the immediate property of the attorney, but rather could be transferred to the attorney's personal account only as earned. This altered a practice of charging a substantial flat fee based upon the type of case, knowing that cases which pled would result in a windfall to counsel, while the occasional case which went to trial would result in a loss, but figuring that most cases would plead. After *Mance* a guilty plea resulted in no such windfall, as the attorney would have to return any portion of the fee not earned.  Of course, an attorney could insist upon a fee which would cover the likely maximum amount of time and expenses involved in trying the indictment, with the understanding that if the case resulted in a plea that much of the fee would be returned. Very few families, however, even those with resources, are capable of amassing at the very outset of a case the large amounts needed to compensate counsel and the defense team for the prospective trial of a complex international narcotics conspiracy. Thus, a reasonable policy of a "rolling" fee agreement makes sense. It does require, however, the Court to support counsel, when after working in good faith, the client or his family cannot meet the subsequent fee obligations.

9. Appointment of Counsel: Defendant personally is, of course, unable to afford to compensate counsel. He is being held without bond in a foreign country, whose language he does not speak. He has no assets in this country, and no way to reach assets, if any, in Mexico. He has no way to compel his wife and family to pay counsel the remainder of the fee, or to engage any other counsel. He is thus eligible for appointed counsel under the CJA, and Defendant asks to Court to do so.

10. There is obviously the related issue as to whether the Court should appoint underlined counsel. On one hand, some level of efficiency suggests that undersigned counsel remain on the case. The case currently has a trial date about two months away (although juror notices have not been sent.) No plea offer has been extended. Although discovery issues remain, a substantial amount of discovery has already been provided. Any new counsel would have to start almost anew, necessitating a continuance of undetermined length. (Undersigned counsel will, of course, provide any new counsel with his work to date.) On the other hand, having been in that position as well, counsel is mindful of a certain unfairness to originally appointed counsel. In this case, however, counsel did not enter his appearance with the expectation that the family could not pay a fee and that he would "steal" a court appointed case. He has worked diligently for over nine months on the case and held dozens of meetings with Defendant.

11. <u>A Second Chair:</u> Should the Court agree to appoint undersigned counsel, he would request that the Court also appoint as a second chair, Ms. Kristen Hughes, Esq. As the Court should be aware from a pleading filed on August 2, 2012 (before Defendant informed counsel that his family could not pay the fee), Ms. Hughes has assisted counsel in this and other cases involving complex litigation, such as involving wiretaps. Given the pending trial date and the significant amount of discovery still outstanding, her assistance is essential to moving the case to trial.

12. <u>Defendant's Consent:</u> Undersigned counsel and Defendant have met many times for hours on end, and a mutual relationship of trust has developed. Counsel

discussed this Motion with Defendant. He consents to the Motion, but strongly urges the Court to permit him to keep undersigned counsel as his appointed counsel.

WHEREFORE, for the foregoing reasons, those contained in the attached Memorandum of Points and Authorities, and any reasons which may become apparent at a hearing on this Motion,  Defendant respectfully requests that this Court either (1) permit him to withdraw or (2) appoint him under the Criminal Justice Act.

Respectfully submitted

/s/

Richard K. Gilbert
Bar. No. 939884
601 Pennsylvania Avenue, N.W.
Suite 900, South Building
Washington, D.C.  20004
(202) 898-0857
rkgesq@juno.com

Attorney for Defendant

IN THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA      :
      :
      v        :      Crim. No 08-cr-00057-16 (CKK)
      :
AURELIO CANO FLORES      :

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
COUNSEL'S MOTION TO WITHDRAW, OR IN THE ALTERNATIVE, TO APPOINT
COUNSEL UNDER THE CRIMINAL JUSTICE ACT.

1. District of Columbia Rule of Professional Responsibility 1.16 (b)(3) reads:

(b) Except as stated in paragraph (c), a lawyer may withdraw from
representing  a client if withdrawal can be accomplished without material
adverse effect on the interests of the client, or if:

> (3) The client fails substantially to fulfill an obligation to the
> lawyer regarding the lawyer's services and has been given
> reasonable warning that the lawyer will withdraw unless the
> obligation is fulfilled.

Counsel's agreement with the family of Defendant specifically provided that an

additional fee would be required if Defendant wanted to go to trial, and specifically

stated that failure to pay the fee would result in counsel's motion to withdraw.

Moreover, counsel warned Defendant personally that he had not received the

additional fee, asked him to honestly inquire of his family whether they could pay the

fee and advised that he would move to withdraw if it could not.

2. Local Criminal Rule 44.5 (d) of this Court provides that once having entered an

appearance in the criminal case, counsel may withdraw only by filing a written motion

with the Court.[2] *See also*, District of Columbia Rule of Professional Responsibility 1.16 (c) (requiring permission of the tribunal to withdraw).

3. Defendant personally has no access to funds or assets with which to pay counsel. As such he is eligible for court-appointed counsel pursuant to Criminal Justice Act, 18 U.S.C. § 3006A.

Respectfully submitted

/s/

Richard K. Gilbert
Bar. No. 939884
601 Pennsylvania Avenue, N.W.
Suite 900, South Building
Washington, D.C.  20004
(202) 898-0857
rkgesq@juno.com

Attorney for Defendant

---

[2] The Rule also provides that a written copy of the motion be served on the defendant. In this case, however, such service would be fruitless as Defendant does not read English. Instead counsel, with the aid of an interpreter, explained the motion to Defendant before it was filed.