IN THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | |
| v : | Crim. No 08-57-16 (BJR) |
| : | |
| AURELIO CANO FLORES : | |

### DEFENDANT'S MOTION TO SUPPRESS WIRETAP EVIDENCE

Defendant, Aurelio Cano Flores ("Cano Flores"), through undersigned counsel, respectfully requests that this Court suppress all evidence against him arising from the unlawful electronic surveillance conducted by the government on twelve of the telephone lines associated with Defendant and others. As grounds therefore, Defendant states:

### I.   BACKGROUND

1. The indictment jointly charges twenty defendants with one count of narcotics conspiracy involving the manufacture and distribution of five kilograms or more of cocaine and 1000 kilograms or more of marijuana for importation into the United States, 21 U.S.C. §§ 959, 960, 963 and 18 U.S.C. § 2, and a criminal forfeiture count, 21 U.S.C. §§ 853 and 970.[1]

2. The indictment was apparently based primarily upon evidence gleaned from a massive wiretap scheme administered in Houston, Texas, but directed primarily against Mexican nationals in the Mexican border area. A staggering number of wire communication intercepts took place beginning in February 2006, involving more than fifty "target devices" and continuing at least until early 2008. In Mr. Cano Flores' case alone, the government has provided the defense with information from thirty-five different intercepted phone lines, resulting in more

---

[1] Defendants other than Mr. Cano-Flores, in various combinations, are charged with two additional counts of distribution of cocaine for importation to the United States for specific acts on October 5, 2007 and November 30, 2007, 21 U.S.C. § 959 and 18 U.S.C. § 2.

1

than 200,000 activations. The government has not yet indicated which calls it intends to introduce at trial.

## II.   THE CANO FLORES WIRETAPS

3.   Three of the wiretap authorizations sought by the United States were for phones it claimed were used by Mr. Cano-Flores. Initially, on March 8, 2007, the government applied for a wiretap on a phone identified as ISMI 334010010119101, Target Device 21, (Line 9101").[2]

4.   On May 18, 2007, the United States sought approval for wiretaps of two additional phones believed to be used by Mr. Cano-Flores, ISMI 334010010196681, Target Device 28, ("Line 6681") and ISMI 334010010303243, Target Device 32, ("Line 3243"). The authorization for the wiretap on Line 3243 was renewed on June 15 and July 13, 2007.[3]

5.   Attached to the government's Application for the first authorization for a wiretap on a line attributed to Mr. Cano Flores, Line 6681, was an Affidavit from DEA Special Agent Roy Brashier. Both the Application and the Affidavit were dated March 8, 2007. The Order was signed on the same day by Judge Lynn N. Hughes of the United States District Court, Southern District of Texas, Houston Division.

6.   The Affidavit from Special Agent Brashier set forth the probable cause to believe that federal drug offenses were occurring and that Mr. Cano Flores and others were involved. It

---

[2] All mobile phone subscribers are assigned a unique International Mobile Subscriber Identity ("ISMI") number which permits foreign mobile networks to identify subscribers from abroad. The IMSI is used in any mobile network that interconnects with other networks. This number is provisioned in the phone directly or in the equivalent of a SIM card. Many of the phone lines intercepted in the wiretaps are identified by their ISMI numbers as subscriber information is not always available.

[3] The telephone numbers (when known) and ISMI numbers assigned to the intercepted phones are quite long and confusing. For purposes of clarity in this motion and memorandum, all devices will be referred to by the last four digits of the numbers used in their identification, regardless of the system used. For example, the target device with ISMI 334010010303243 is named Line 3243 and the target device with phone number (956) 903-5347 is named Line 5347.

also set forth the objectives of the wiretap and the reasons why other investigative techniques would not achieve the same results. Finally, the Affidavit discussed the "minimization" of "non-pertinent" calls:

> 38. It is anticipated the majority of the communications will be spoken in the Spanish language, which will be monitored by Spanish speaking DEA S/As or other authorized duly deputized law enforcement officers or individuals operating under contract with the government subject to supervision by DEA agents. Conversations will be minimized in accordance with Chapter 119 of Title 18, United States Code. These interceptions will also be minimized when it is determined, through voice identification, physical surveillance or otherwise, that neither the Subject-Interceptees, nor their associates, when identified, are participants in the conversation unless it is determined during the portion of the conversation already overheard that the conversation is criminal in nature. Even if one or more associates, when identified, is a participant in the conversation, monitoring will be minimized if the conversation is not criminal in nature or otherwise related to the offenses under investigation. It is understood that agents will be permitted to spot check minimized conversations to determine whether the conversation has turned criminal in nature, and therefore, subject to interception.

*Affidavit in Support of Application* dated March 8, 2007 at 40.

7. The Application submitted to Judge Hughes contained the following language about minimization:

> IT IS FURTHER REQUESTED that this Court direct that its Order be executed as soon as practicable after it is signed and that all monitoring of wire communication shall be conducted in such a way as to minimize the interception and disclosure of the communications intercepted to those communications relevant to the pending investigation, in accordance with the minimization requirements of Chapter 119 Title 18, United States Code. If the conversation is minimized, the monitoring agent shall spot-check to ensure that the conversation has not turned to criminal matters. Special attention will be given to minimize all privileged communications.

*Application for an Order Authorizing the Interception of Wire Communications*, March 8, 2007 at 7-8.

8. The Order of Judge Hughes specifically addressed the issue of minimization:

3

>IT IS FURTHER ORDERED that this order shall be executed as soon as practicable after it is signed; [ … ], and shall be conducted in such a way as to minimize the interception and disclosure of the communications intercepted to those communications relevant to the pending investigation, in accordance with the minimization requirements of Chapter 119 Title 18, United States Code. If the conversation is minimized, the monitoring agent shall spot-check to ensure that the conversation has not turned to criminal matters. Special attention will be given to minimize all privileged communications.

*Order Authorizing the Interception of Wire Communications*, March 8, 2007, at 4-5.

### III.   ADDITIONAL WIRETAPS

9.   Mr. Cano Flores also moves to suppress evidence from ten wiretaps for phones the government claims were used by other members of the alleged conspiracy. The identifying information for each line challenged is provided in a chart attached as Exhibit 3.

10.   Although the specific DEA agents proffering Affidavits in support of the applications for these wiretaps may vary, each of the Affidavits submitted by the Special Agents included language substantially identical to that of the Affidavit dated March 8, 2007 in regard to the required minimization of certain communications pursuant to Chapter 119 of Title 18, United States Code.

11.   Similarly, the language in the Applications for authorization of the other wiretaps concerning minimization is substantially identical to the language used in the March 8, 2007 Application and the language in the Orders authorizing the other wiretaps is substantially identical to the language used in the March 8, 2007 Order concerning minimization requirements.

12.   It is the understanding of counsel that here in the District of Columbia, the Office of the United States Attorney has prepared a written memorandum to instruct agents conducting wiretaps on the procedures to be followed. Counsel further understand that agents attend a briefing on the procedures and are required to sign a form indicating that they had been briefed

on the required procedures. Counsel has not been able to determine whether a similar protocol was followed by the Narcotic and Dangerous Drug Section of the Justice Department's Criminal Division, or by the Drug Enforcement Administration agents implementing the wiretaps in the present case.

### III.   MINIMIZATION ANALYSIS

13.   Some of the more critical information in analyzing the results of a wiretap comes from what are known as the Linesheet Reports," files which list in sequence the data about each activation on a wiretap, as well as a contemporaneous synopsis of the intercepted conversation. Each Linesheet Report entry assigns a session number to the activation and then includes the following information: the case and line numbers; the date, time and duration of the call; whether the call was incoming or outgoing; the corresponding telephone number; the monitoring agent's determination if the call was deemed "pertinent" at the time; and whether or not the call was "minimized."

14.   Using the relevant Linesheet Reports for the wiretaps produced in discovery by the United States, Defendant Aurelio Cano Flores was able to perform a statistical analysis of the government's efforts to minimize "non-pertinent" conversations.

15.   For purposes of this analysis, Defendant initially divided the activations on each line into two groups: 1) calls continuing for two minutes or longer, and 2) calls lasting less than two minutes.[4] Given the stated purpose of the minimization requirement and the acknowledged difficulties associated with determining whether or not a call is pertinent in less than two minutes, the key data for evaluating the effectiveness of the government' efforts to minimize

---

[4] Although the application and orders all indicated that calls not of a criminal nature would be immediately minimized, Defendant has adopted the commonly accepted threshold of two minutes as providing the monitoring agent with sufficient time to determine if a call is pertinent or not.

5

"non-pertinent" conversations is the data generated for non-pertinent calls of two minutes or more in duration.

16. Next, Defendant determined for activations continuing for two minutes or longer which ones had been designated by the listening agent as "non-pertinent," or not criminal in nature or otherwise related to the offenses under investigation, and thus afforded the protection of minimization.

17. Finally, Defendant then determined the number of non-pertinent calls continuing for two minutes or longer that were minimized by the listening agents.

18. Defendant now moves to suppress the evidence derived from certain of the wiretaps based on three general grounds.

### A. The Government Completely Failed to Minimize Any of the Interceptions in 5 Lines

| Line | 3243 | 4353 | 6670 | 9095 | 6681 |
| --- | --- | --- | --- | --- | --- |
| Target Device | 32 | 22 | 12 | 48 | 28 |
| Non-Pertinent Calls 2 Minutes or Longer | 3 | 6 | 4 | 4 | 8 |
| Calls Minimized | 0 | 0 | 0 | 0 | 0 |
| Failure Rate | 100% | 100% | 100% | 100% | 100% |

19. The data generated for non-pertinent calls of two minutes or more in duration in the wiretaps in this category dramatically demonstrates the United States failed to comply with the minimization requirements. The listening agents failed to minimize ***100 percent*** of the non-pertinent calls that were two minutes or longer. A table illustrating the specific calls the government failed to minimize is attached as Exhibit 1.

B. **The Government's Minimization of the Interceptions was Deficient and Insufficient on 7 Lines**

| Line | 6955 | 1649 | 5347 | 1657 | 0748 | 1745 | 4953 |
|---|---|---|---|---|---|---|---|
| Target Device | 29 | 40 | 36 | 16 | 35 | M.4 | 34 |
| Non-Pertinent Calls 2+ Minutes | 595 | 116 | 93 | 83 | 81 | 20 | 18 |
| Calls Minimized | 89 | 19 | 9 | 8 | 9 | 2 | 8 |
| Failure Rate | 85% | 84% | 90.4% | 90.4% | 89% | 90% | 56% |

20. Of the 1006 protected calls in this second category of Mr. Cano Flores' objections, the monitoring agents simply did not bother to minimize 862 of the calls. The government's aggregate failure rate is 85.7 percent. A table of the protected calls which should have been minimized, but were not, is included as Exhibit 2 to this motion.

21. The data generated for non-pertinent calls of two minutes or more in duration in the wiretaps in this category incontrovertibly demonstrates the United States failed to comply with the minimization requirements as required by Chapter 119 of Title 18, United States Code and by the Orders issued by the Court.

22. The procedures the government claims to have put into place matter little when they are not followed or when there is inadequate supervision. Defendant contends the data clearly shows the performance of the listening agents in minimizing non-pertinent calls continuing for two minutes or longer was dismal, resulting in multiple violations of the very rights Title III was enacted to protect.

WHEREFORE, for the above reasons, as well as those set forth in the attached Memorandum of Points and Authorities, Defendant Aurelio Cano Flores respectfully request that this Court suppress all evidence against him arising from the improper electronic surveillance conducted by the government on Line 6681, Line 9095, Line 6955, Line 1649, Line 5347, Line

1657, Line 0748, Line 1745, Line 4953, Line 2627, Line 6678 and Line 9101 of the wiretaps in this case.

                    Respectfully submitted

                    /s/ Kristen Grim Hughes

Richard K. Gilbert
Bar. No. 939884
601 Pennsylvania Avenue, N.W.
Suite 900, South Building
Washington, D.C. 20004
(202) 898-0857 phone
rkgesq@juno.com

Kristen Grim Hughes
DC Bar No. 42875
1390 Chain Bridge Road, #530
McLean, Virginia 22101
(703) 798-4444 phone
kghughes@hotmail.com

Attorneys for Defendant Cano Flores
Appointed by the Court

IN THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v | : | Crim. No 08-57-16 (BJR) |
| | : | |
| AURELIO CANO FLORES | : | |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
DEFENDANT'S MOTION TO SUPPRESS WIRETAP EVIDENCE**

### I. STANDING

1. The Federal Wiretap Statute, enacted in Title III of the Omnibus Crime Control and Safe Streets Act of 1968, is codified at 18 U.S.C. §§ 2510 through 2522. Section 2518 (10)(a), which authorizes "aggrieved persons" to move to suppress both the contents of the intercepted communications and the evidence derived therefrom, provides in pertinent part:

> Any aggrieved person in a trial, hearing, or proceeding before any court, department, officer, agency, regulatory body, or other subdivision thereof, may move to suppress the contents of any wire or oral communication intercepted pursuant to this chapter, or evidence derived therefrom, on the grounds that -
>
> (i) the communication was unlawfully intercepted;
> (ii) the order of authorization or approval under which it was intercepted is insufficient on its face; or
> (iii) the interception was not made in conformity with the order of authorization or approval.

2. An "aggrieved person" includes a party or participant to the intercepted wire communications, as well as the person on whose premises the intercepted conversation occurred. *Alderman v. United States*, 394 U.S. 165, 174 (1969). Defendant Aurelio Cano Flores was a participant in numerous conversations in the proffered wiretaps. Thus, he is an "aggrieved person" under 18 U.S.C. 2518 (10)(a), and has standing to challenge the evidence from the wiretaps. See *United States v. Eiland*, 398 F.Supp.2d 160 (D. D.C. 2005).

## II.   MINIMIZATION

3.   The Federal Wiretap Statute, 18 U.S.C. § 2518(5) requires that when a wiretap order is secured, such order shall contain a provision that the authorization to intercept shall be conducted in such a way as to minimize the interception of communications not otherwise subject to interception under this chapter. The United States and the Court clearly recognized this legal obligation because the Applications for the wiretaps, the Affidavits in support of the Applications, and the Orders granting the requests for the wiretaps all specifically addressed the minimization requirement. The question, therefore, is whether the listening agents complied with the Court's Orders and the statutory requirement.

4.   Whether the government has complied with the minimization requirement is judged on a case-by-case basis, and the test for whether the government agents conducted the wiretap in accordance with the minimization requirement is one of "reasonableness." *United States v. Suggs*, 531 F.Supp.2d 13, 20 (D.D.C. 2008), *citing Scott v. United States*, 936 U.S. 128, 139-140 (1978). Moreover, determining the reasonableness of minimization efforts is a fact-specific inquiry; "there can be no inflexible rule of law which will decide every case." *United States v. Glover*, 681 F.3d 411, 420-421 (D.C. Cir. 2012) *citing Scott,* 436 U.S. at 139.

5.   The burden of proving that the executing agents complied with the statutory minimization requirement falls upon the government. *United States v. Torres*, 908 F.2d 1417, 1423 (9th Cir. 1990).

6.   However, Defendant also bears a burden to "identify particular conversations so that the government can explain their non-minimization in order to bring "the issue of reasonable minimization .... in[to] play.." *Suggs*, 531 F.Supp.at 20 n.3 *citing United States v.*

10

*Carter*, 449 F.3d 1287, 1295 (D.C. Cir. 2006). Motions to suppress have been denied where arguments are couched in broad terms, proffering no "information as to the number, timing, frequency, or subject matter" of conversations alleged to have been inadequately minimized. *Carter*, 449 F.3d at 1295.

7. Defendant has met this burden, by providing extensive information on calls that should have been minimized, but were not. *See* Exhibits 1 and 2. Defendant does not allege "isolated incidents of irrelevant interceptions," but rather alleges a consistent pattern of failure to minimize eligible calls.

8. Although not required to prevent the interception of each and every non-pertinent conversation, the government must nevertheless "make reasonable efforts to 'minimize' the interception of such conversations." *Carter*, 449 F.3d at 1295 *citing Scott,* 936 U.S. at 139-40. Defendant contends the government's efforts, if any, to minimize the interception of non-pertinent conversations were not reasonable.

9. The data generated from the Linesheet Reports for non-pertinent calls continuing for two minutes or more indisputably demonstrates the United States failed to comply with the minimization requirements. Consistent failure rates in the range of 85% to 100% are not signs of reasonable compliance.

### III. APPROPRIATE REMEDY

10. One court has concluded that the relief of suppression of all the calls from a wiretap should be reserved for the "horrendous" case "where the government has made effectively no effort towards minimization whatsoever." *Suggs*, 531 F.Supp.2d at 24 *citing United States v. Cleveland*, 964 F.Supp. 1073, 1092 (E.D.La. 1997), *United States v. Baltas*, 236 F.3d 27, 32 (1st Cir. 2001), and *United States v. Hoffman*, 832 F.2d 1299, 1309 (1st Cir. 1987).

11. Defendant argues in the present case the government has done exactly that, on xx lines the government made no effort whatsoever, and on xxx others, minimized less than XX % of the "protected" calls. In Defendant's view this is "effectively no effort towards minimization whatsoever." Forfeiture of the evidence derived from these twelve lines, is an appropriate sanction and may deter the government from continuing in its illegal practices.

WHEREFORE, for the above reasons, as well as those set forth in the attached Motion, Defendant respectfully requests that this Court suppress all evidence against him arising from the electronic surveillance conducted by the government on Line 6681, Line 9095, Line 6955, Line 1649, Line 5347, Line 1657, Line 0748, Line 1745, Line 4953, Line 2627, Line 6678 and Line 9101 of the wiretaps in this case.

Respectfully submitted

/s/ Kristen Grim Hughes

Richard K. Gilbert
Bar. No. 939884
601 Pennsylvania Avenue, N.W.
Suite 900, South Building
Washington, D.C. 20004
(202) 898-0857
rkgesq@juno.com

Kristen Grim Hughes
DC Bar No. 42875
1390 Chain Bridge Road, #530
McLean, Virginia 22101
(703) 798-4444 phone
(202) 742-2804 fax
kghughes@hotmail.com

Attorneys for Defendant Cano Flores
Appointed by the Court