UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| v. | ) Case No. 08-CR-057 (TNM) |
| | ) |
| ELEAZAR MEDINA-ROJAS, | ) |
| also known as | ) |
| "El Chelelo," | ) |
| | ) |
| Defendant. | ) |

## JOINT STATEMENT OF STIPULATED FACTS

The statement of facts does not purport to include all the Defendant's illegal conduct during the charged offense, nor is it intended to represent all the Defendant's relevant conduct for sentencing purposes. The statement of facts does not constitute an inclusive recitation of all that the Defendant heard, knew, or witnessed concerning the illegal activities of himself or those of his conspirators. It instead represents sufficient information for the Court to find a factual basis for accepting the Defendant's guilty plea in the above-captioned matter. Had the Defendant proceeded to trial, the Defendant agrees that the Government's evidence would show the following beyond a reasonable doubt:

1. Beginning in or about 2000, and continuing until at least April 2008, in Mexico and elsewhere, the Defendant was a member of a conspiracy, the object of which was to manufacture and distribute five kilograms or more of cocaine and one thousand kilograms or more of marijuana, intending and knowing that such substances would be unlawfully imported into the United States, in violation of 21 U.S.C. §§ 959(a), 960, and 963.

2. During the course and in furtherance of the conspiracy alleged in the Fourth Superseding Indictment, the Defendant admits that he was a high-ranking member of "Los Zetas,"

a drug trafficking organization ("DTO") comprised primarily of former Mexican military officers allied with the Gulf Cartel. The Defendant, while not former military, was a member of Los Zetas.

3. The Gulf Cartel was a violent Mexican criminal organization engaged in manufacturing, distributing, and importing large quantities of cocaine and marijuana into the United States, among other illegal activities. "Los Zetas" first served as an armed militaristic wing for the Gulf Cartel to maintain control of drug trafficking routes throughout Mexico. Between 2000 and 2010, the Gulf Cartel and Los Zetas formed an alliance and operated collectively under the name "The Company."

4. The Company controlled hundreds of miles of Mexican territory along the border of Mexico and the United States. The Company divided its territory into areas known as "plazas" and assigned a leader, known as a "plaza boss." Using boats, planes, and motor vehicles, The Company transported large cocaine shipments from Colombia and Venezuela to Central America, and then to various plazas in Mexico. The Defendant oversaw aspects of The Company's drug trafficking in Mexico and directly aided their activities into and within the United States.

5. Specifically, The Company had a significant distribution network to transport wholesale quantities of cocaine from Colombia, before its importation into Mexico and the United States. The Company used its control of strategic locations to import tonnage quantities of cocaine and marijuana into the United States. The Company shipped cocaine from Colombia to Mexico where the cocaine was stored until it was loaded onto tractor trailers for transportation into the United States. The Company also transported large quantities of marijuana grown in Mexico to plazas using motor vehicles. The Company then transported the shipments of cocaine and marijuana from Mexico to the United States for distribution.

6. The Defendant initially was responsible for enforcement actions and protection of

drug trafficking routes often through violence, threats of violence, and the use of weapons. The Defendant gained status in the organization, ultimately holding important leadership roles and controlling drug trafficking activities for the DTO within specific areas. Between 2006 and 2007, the Defendant was a "plaza boss" in Monterrey, Mexico, where approximately 80 other DTO members worked under his supervision. As a plaza boss in Monterrey, the Defendant directed The Company's cocaine and marijuana-trafficking activities through areas within his command and control, and taxed other shipments of illegal drugs that crossed through controlled territory, often to enter the United States. As an example of the quantities managed by the Monterrey plaza, between June 2006 and July 2007, the Monterrey plaza purchased over 6,000 kilograms of cocaine at a total cost of more than $26,500,000 United States dollars. The Defendant was plaza boss of this area during this time period until at least April 2007.

7. The Defendant coordinated cocaine and marijuana loads from Mexico into the United States, shipping the drugs in box trucks and other vehicles outfitted with hidden compartments. After the drugs were delivered in the United States, the Defendant would receive cash payment for the drugs in United States currency. Often the cash transports from the United States back to Mexico would also be made in tractor trailers or in vehicles with trap doors or other hidden compartments.

8. The Defendant was personally responsible for the importation of more than 450 kilograms of cocaine and 90,000 kilograms of marijuana into the United States. The Defendant sold controlled substances on behalf of The Company and personally invested in drug loads. Most of the controlled substances distributed by The Company were ultimately destined for and crossed into the United States.

9. The Defendant carried weapons when conducting Company business. Due to his

status in the organization, the Defendant also had a security detail that would escort him throughout Mexico. The security detail would carry larger weapons, including rifles. Additionally, the Defendant was responsible for exchanging weapons with other members of The Company.

10. The Defendant and other members of The Company participated in acts of violence against rival drug trafficking groups during conflicts for control over drug plazas and trafficking routes. These acts of violence involved the use of weapons.

11. The Defendant admits that the total amount of controlled substances involved in this conspiracy that is directly attributable to him was more than 450 kilograms of cocaine and more than 90,000 kilograms of marijuana.

12. The Defendant admits that he knew the cocaine and marijuana would be illegally imported into the United States for further distribution.

13. The Defendant agrees venue and jurisdiction lie with this Court pursuant to 18 U.S.C. § 3238.

14. The Defendant also agrees that his participation as a conspirator in the above-described acts were in all respects knowing, intentional, and willful, reflecting an intention and deliberation to do something the law forbids and were not in any way the product of any accident, mistake of law or fact, duress, entrapment, or public authority.

15. With his signature below and that of his counsel, the Defendant agrees that he has fully adopted this statement of facts as his own statement. The Defendant is adopting this statement of facts because it is a true and correct summary of the Defendant's own conduct.

16. The Defendant is pleading guilty because the Defendant is in fact guilty.

Respectfully submitted,

MARLON COBAR
Chief
Narcotic and Dangerous Drug Section
Criminal Division
U.S. Department of Justice

Date: 3/14/25

By: _____
JAYCE L. BORN
KIRK HANDRICH
Trial Attorneys

Approved by:
Date: 3/14/2025

By: _____
MELANIE L. ALSWORTH
Acting Deputy Chief of Litigation

## DEFENDANT'S ACKNOWLEDGMENT

I have reviewed this Statement of Facts with the assistance of an English-Spanish interpreter, and have discussed it at length with my attorney, Jason M. Davis, Esq. This Statement of Facts has been translated into Spanish for me. I understand that the English version controls. I fully understand this Statement of Facts and agree to it without reservation. I do this voluntarily and of my own free will, intending to be legally bound. No threats have been made to me, nor am I under the influence of anything that could impede my ability to understand this Statement of Facts fully.

I reaffirm that absolutely no promises, agreements, understandings, or conditions have been made or entered into in connection with my decision to plead guilty except those set forth in the accompanying Plea Agreement dated March 14, 2025. I am satisfied with the legal services provided by my attorney in connection with this Statement of Facts, the accompanying Plea Agreement, and all matters related to it.

_E.M.R._  
ELEAZAR MEDINA-ROJAS  
Defendant

_E.M.R._  
Date

## ATTORNEY'S ACKNOWLEDGMENT

I am the Defendant's attorney. I have fully explained to the Defendant, through an English-Spanish interpreter, the Defendant's rights and the applicable provisions of the Sentencing Guidelines. I have carefully reviewed every part of this Statement of Facts with the Defendant. The Defendant is agreeing to this Statement of Facts voluntarily, intelligently, and with full knowledge of all consequences of the Defendant's plea of guilty.

_[signature]_  
JASON M. DAVIS, ESQ.  
Attorney for Defendant

_3/14/25_  
Date

6