UNITED STATES DISTRICT COURT

DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | |
| PLAINTIFF | § | |
| | § | |
| V. | § | CASE NO. 08-CR-00057-TNM |
| | § | |
| MIGUEL ANGEL TREVINO-MORALES (4) | § | |
| DEFENDANT | § | |

## REPLY IN SUPPORT OF MOTION TO DISMISS COUNT THREE AND VIOLATIONS ONE THROUGH FIVE OF COUNT ONE

NOW COMES Defendant Miguel Angel Trevino Morales by and through undersigned counsel and presents this Reply to the Government's Response to Defendant's Motion to Dismiss Count Three and Violations One through Five of Count One.[1]

The government's opposition to Mr. Treviño's Motion to Dismiss is far from a full-throated defense of the operative indictment. *See* Docket No. ("Doc.") 788. Although the government claims the indictment is adequately pled, it also asserts that it intends to seek a superseding indictment with "at least some of the additional factual detail that the

---

[1] Undersigned counsel represents to this Court that counsel for Miguel Angel Trevino Morales and Omar Trevino Morales collaborated on the substantive argument to present to this Court, and therefore this Reply is the same substantive reply filed by codefendant Omar Trevino Morales except to the extent it is tailored to address the differences in the charges filed against Miguel Angel Trevino Morales.

defendants claim is missing from the current indictment." *Id.* at 4. The government then asserts that if it had been consulted, it "would have informed [the defense] that the anticipated superseding indictment would include some or all the factual detail they claim is lacking." *Id.* at 4 n.1. But this would not have obviated the need for a motion to dismiss, as Mr. Treviño is facing *this* constitutionally inadequate indictment, not some hypothetical future one.

The government cites no authority for the proposition that this Court can ignore a challenge to an operative indictment based on the government's plan to try to get a better one.  Mr. Treviño has a Fifth Amendment right to grand jury indictment, under which he cannot be "held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury[.]" U.S. CONST. amend. V. Currently, Mr. Treviño is not being held under a constitutional indictment. A challenge to the indictment under which he is charged is thus hardly "premature"—on the contrary, Rule 12 of the Federal Rules of Criminal Procedure requires Mr. Treviño to raise this issue "by pretrial motion if the basis for the motion is then reasonably available and the motion can be determined without a trial on the merits." FED. R. CRIM. P. R. 12(b)(3). What is premature is the government's assumption that it will obtain a superseding indictment from a grand jury, despite apparently not having presented such an indictment to date. The Court should thus ignore the government's plea to set aside this issue "unless and until the Government

fails to obtain a superseding indictment before the next scheduled status conference." *Id.*

at 5.

### 1. The Government Ignores the Grand Jury Right.

Throughout its response, the government focuses on only two aspects of a valid

indictment: notice and double jeopardy protection. *See, e.g.*, Doc. 788 at 5 (arguing that

the indictment "contain[s] sufficient detail to inform the defendants . . . and to provide

Double Jeopardy protection"); *id.* at 9 (claiming that the murder violations "are sufficient

for the defendants to 'prepare [their defense and plead double jeopardy'"). Notably, the

government *never mentions Mr. Treviño's grand jury right*. It is the grand jury right,

however, that cannot be protected by a bill of particulars.

As the Supreme Court has explained, "a bill of particulars cannot save an invalid

indictment" because "allow[ing] the prosecutor, or the court, to make a subsequent guess

as to what was in the minds of the grand jury at the time they returned the indictment

would deprive the defendant of a basic protection which the guaranty of the intervention

of a grand jury was designed to secure." *Russell v. United States*, 369 U.S. 749, 770 (1962);

*see also United States v. Cecil*, 608 F.2d 1294, 1296 (9th Cir. 1979) ("The very purpose of

the requirement that a man be indicted by a grand jury is to limit his jeopardy to offenses

charged by a group of his fellow citizens acting independently of either prosecuting

attorney or judge.") (citing *Russell*, 369 U.S. at 771); *United States v. Tomasetta*, 429 F.2d

978 (1st Cir. 1970) ("The federal system views the grand jury as an important element of

3

the criminal process. It, and it alone, is competent to charge an accused with a crime of this nature . . . ."); *United States v. Hooker*, 841 F.2d 1225, 1226 (4th Cir. 1988) (holding that trial court erred in ruling that deficiency in indictment could have been cured by request for bill of particulars).

The indictment in this case raises the very issue identified by *Russell*: Mr. Treviño "could . . . be convicted on the basis of facts not found by, and perhaps not even presented to, the grand jury which indicted him." *See Russell*, 369 U.S. at 770. In a series of footnotes, the government illustrates exactly how this can occur. For example, the government states that "violation 1 alleges that 'in or about May 2008,' the defendants killed or caused the killing [sic] 'members of the Mexican government, including public officials, law enforcement officers and members of the military.'" Doc. 788 at 8 (quoting Doc. 576 ¶ 11). In a footnote, we learn that despite charging Mr. Treviño with killing *multiple* public officials, law enforcement officers, and military members in May 2008, the government in fact means that he allegedly killed a single law enforcement officer, Francisco Javier Hernandez Zamorano. *Id.* at 8 n.5. Similarly, "Violation 3 alleges that 'from in or about January 2003, and continuing thereafter up to and including the date of the filing of this Indictment,' the defendants killed or caused the killing of 'members and associates of Los Zetas and the Gulf Cartel.'" Doc. 788 at 8–9 (quoting Doc. 576 ¶ 13). In another footnote, however, we learn that despite charging Mr. Treviño with killing multiple cartel members

over the course of more than twenty-one years, the government in fact means that he

allegedly killed a *single* cartel member ("Avisba") in *Spring 2011*. *Id.* at 9 n.7.

Each of the charges is similarly vague. The killing of "citizens of Mexico" in March

2011 becomes two specific incidents in two different towns. *See id.* at 8 & 8 n.6. The

indictment charge of killing of multiple Guatemalan public officials, law enforcement

officers, and military members becomes the murder of a specific Guatemalan prosecutor.

*See id.* at 9 & 9 n.8. The indictment charge of murder of unspecified multiple "Guatemalan

drug traffickers and other citizens of Guatemala" becomes the killing of a specific

Guatemalan man "and his associates." *See id.* at 9 & 9 n.9.  And finally, Count 2 has

become an allegation that at some unspecified point during an alleged twenty-year

narcotics conspiracy, Mr. Treviño or one of his co-conspirators used a machine gun,

destructive device, or a firearm equipped with a silencer or muffler. *See id.* at 5.

What possible assurance can there be that the grand jury found probable cause to

support the *specific events* the government now alleges? For example, how do we know

that the grand jury found probable cause to indict Mr. Treviño for the murder of "Avisba,"

for the murder of Hernandez Zamorano, and for the murder of Juan Leon Ardon, let alone

the unnamed and unnumbered alleged victims? How do we know that the grand jury

found a specific use of a machine gun, destructive device, or firearm with a silencer or

muffler? The government is asking this Court to allow it to do exactly what the Supreme

Court disallows: "make a subsequent guess as to what was in the minds of the grand jury

at the time they returned the indictment." *See Russell*, 369 U.S. at 770. This is impermissible, and it is no wonder that the government's response fails to address the Fifth Amendment grand jury right.

### 2.  The Cases Cited by the Government Do Not Support the Indictment.

The government argues that both Count 3 and the alleged murder violations are sufficiently pled under FED. R. CRIM. P. 7(c)(1). The government suggests that an indictment is sufficient so long as it lists the elements of the offense. But in fact, it is well settled that is *not* the case. "Undoubtedly the language of the statute may be used in the general description of an offence, *but it must be accompanied with such a statement of the facts and circumstances as will inform the accused of the specific offence, coming under the general description*, with which he is charged." *Hamling v. United States*, 418 U.S. 87, 117–18 (1974) (quoting *United States v. Hess*, 124 U.S. 483, 487 (1888)) (emphasis added); *see also United States v. Simmons*, 96 U.S. 360, 362 (1877) ("An indictment not so framed is defective, although it may follow the language of the statute.").

Moreover, the cases cited by the government do not support the Fifth Superseding Indictment. For example, the government cites the Supreme Court's opinion in *United States v. Resendiz-Ponce*, 549 U.S. 102, 110 (2007) for the proposition that "an indictment parroting the language of a federal criminal statute is often sufficient." Doc. 788 at 3. But in fact, *Resendiz-Ponce* stands for the importance of including "time-and-place

6

information"—the type of basic information that is lacking from the Fifth Superseding indictment.

In *Resendiz-Ponce*, the defendant was charged with attempted illegal reentry. Among other things, the indictment alleged a specific day on which the attempted reentry had occurred, as well as a specific location within the district at which the defendant had attempted to reenter. *Id.* at 105 (noting that the indictment provided that "*[o]n or about June 1, 2003*, Juan Resendiz-Ponce, an alien, knowingly and intentionally attempted to enter the United States of America *at or near San Luis* in the District of Arizona . . . .") (emphasis added). The Supreme Court emphasized the importance of such "time-and-place information," drawing a constitutional distinction between the indictment in that case and a hypothetical one that lacked such specificity: "After all, a given defendant may have approached the border or lied to a border-patrol agent in the course of countless attempts on innumerable occasions. For the same reason, the time-and-date specification in respondent's indictment provided ample protection against the risk of multiple prosecutions for the same crime." *Id.* at 108. The specific indictment in *Resendiz-Ponce* was thus far from the vague allegations in this case.

Similarly, the government cites *United States v. Williamson*, 903 F.3d 124, 130 (D.C. Cir. 2018). Doc. 788 at 2. In *Williamson*, the defendant was charged with threatening to murder a federal law enforcement officer. The threat occurred on a specific date, was made on a recorded line, and was admitted by the pro se defendant. *Williamson*, 903 F.3d

at 129. The *Williamson* court pointed out that the indictment not only "echoes the operative statutory text," but "also specif[ies] the time and place of the offense (as well as the identity of the threatened officer)." *Id.* at 130.[2] Again, the specificity of the indictment in *Williamson* was far from the indictment in this case, which offers vague accusations and broad date ranges, not specific locations, specific dates and times, or the identities of the alleged victims.

As another example, the government cites *United States v. Venkata*, 596 F. Supp. 3d 58, 62 (D.D.C. 2022) for the proposition that this Court's review should not be "hypertechnical." Doc. 788 at 3. But what Mr. Treviño seeks is not hypertechnical; it is basic. As the Court noted in *Venkata*, "[t]he generally applicable rule is that the indictment may use the language of the statute, but that language *must be supplemented with enough detail to apprise the accused of the particular offense with which he is charged*.'" *Venkata*, 596 F. Supp. 3d at 62 (quoting *United States v. Conlon*, 628 F.2d 150, 156 (D.C. Cir. 1980)) (emphasis added). Indeed, in *Conlon*, the D.C. Circuit also observed that "it is settled that a bill of particulars and a fortiori oral argument cannot cure a defective indictment." *Conlon*, 628 F.2d at 156. By the same reasoning, the interpretations offered by the

---

[2] The indictment charged that "On or about June 19, 2014, within the District of Columbia, defendant . . . did threaten to assault and murder a Federal law enforcement officer, that is, Brian Schmitt, a Special Agent with the Federal Bureau of Investigation, with intent to retaliate against such . . . officer on account of the performance of his official duties." *Id.* at 130.

government in its Response—which are, like oral argument, the interpretations of

counsel—cannot cure a defective indictment.

3.  **The Government Wrongly Argues that the Federal Rules Have Supplanted the Need for Specificity.**

Perhaps because the case law does not support this vague indictment, the

government argues that one of the seminal cases on this issue—*United States v.*

*Cruikshank*, 92 U.S. 542, 558 (1875)—is no longer good law. Doc. 788 at 11 (arguing "that

case was decided well before the adoption of the Federal Rules, which 'were designed to

eliminate technicalities in criminal pleadings.'") (quoting *Resendiz-Ponce*, 549 U.S. at 110).

In fact, *Cruikshank* is good law, and specificity is still required even under the Federal

Rules.

As the United States Supreme Court has instructed:

> "It is an elementary principle of criminal pleading, that where the definition
> of an offence, whether it be at common law or by statute, 'includes generic
> terms, it is not sufficient that the indictment shall charge the offence in the
> same generic terms as in the definition; but it must state the species—it
> must descend to particulars.'" *Cruikshank*, 92 U.S. at 558 . . . . "Undoubtedly,
> the language of the statute may be used in the general description of an
> offense, but it must be accompanied with such a statement of the facts and
> circumstances as will inform the accused of the specific offense, coming
> under the general description, with which he is charged. *United States v.*
> *Hess*, 124 U.S. 483, 487 (1888) . . . . **That these basic principles of fundamental**
> **fairness retain their full vitality under modern concepts of pleading, and**
> **specifically under Rule 7(c) of the Federal Rules of Criminal Procedure, is**
> **illustrated by many recent federal decisions**.

*Russell*, 369 U.S. at 765–66 (emphasis added).

9

Specificity remains the law. Yet, in this case, Mr. Treviño faces vague allegations that fail to protect his rights to notice, to double jeopardy protection, and to the requirement of grand jury findings. The government argues that Mr. Treviño should simply ask for a bill of particulars. There are two basic problems with this approach. One is that, as discussed above, a bill of particulars does nothing to ensure that the grand jury found probable cause for the events that the government now describes. Another is that, in each of the cases cited by the government for the proposition that Mr. Treviño should request a bill of particulars, the government actually *opposed* a bill of particulars. *See* Doc. 788 at 9 (citing *United States v. Raymond*, No. CR 21-380, 2023 WL 6294178 (D.D.C. Sept. 27, 2023); *United States v. Connell*, No. CR 21-0084, 2023 WL 4286191 (D.D.C. June 30, 2023)).

This is a serious and complex case. Mr. Treviño is attempting to defend himself against a broad array of accusations that include five separate murder charges and a firearm charge that carries a mandatory minimum thirty-year sentence. The government argues that the Indictment does not fail to allege the "core of criminality" because "a killing in furtherance of a drug conspiracy is illegal, regardless of the precise dates, location, and identifies of the victims." Doc. 788 at 10. The crux of the government's argument, then, is that it is sufficient to charge someone with "murder" generally without specifying the specifics of the murder (i.e., specific date, location, victim, etc.) on the mere basis that the act of murder is criminal. But the core of criminality of murder *is* the killing

10

of a specific human being, which by the nature of the crime occurs in a specific place, on

a specific date, and at a specific time. This is the *actus reus* itself. The government's

interpretation flies in the face of basic charging standards, and this Court should reject it.

Respectfully submitted,

                                                    /s/ William B. Purpura

Michael McCrum                          William B. Purpura, Esquire
McCrum Law Office                       Purpura & Purpura
1659 Tx-46 W, Ste. 115                  606 Baltimore Ave.
PMB 487                                 Suite 301
New Braunfels, Tx. 78132                Towson, Maryland 21204
Office 210.225.2285                     Office 410-727-8550
Tx Bar No. 13493200                     DC Fed Bar # MD00074
michael@mccrumlegal.com                 wpurpura@purpuralaw.com

**Counsel for Miguel Angel Treviño Morales**

**CERTIFICATE OF SERVICE**

    I, William B. Purpura, hereby certify that on this February 27, 2026, I electronically filed the
foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such
filing to all counsel of record.

                                                    /s/ William B. Purpura