UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| v. | )   Case No. 08-CR-057 (TNM) |
| | ) |
| DANIEL PEREZ-ROJAS | ) |
| a.k.a. "Cachetes," | ) |
| a.k.a. "Cacheton," | ) |
| | ) |
| | ) |
| Defendant. | ) |

## JOINT STATEMENT OF STIPULATED FACTS

The statement of facts does not purport to include all the Defendant's illegal conduct during the course of his charged offense. Nor does it purport to be an inclusive recitation of all that the Defendant heard, knew, or witnessed concerning the illegal activities of himself or those of his conspirators. It represents sufficient information for the Court to find a factual basis for accepting the Defendant's guilty plea in the above-captioned matter and is not intended to represent all the Defendant's relevant conduct for sentencing purposes. Had the Defendant proceeded to trial, the Defendant agrees that the Government's evidence would show the following beyond a reasonable doubt:

1. From at least in or about 2001 and continuing thereafter up to and including at least February 2010, within the countries of Mexico, Guatemala, and elsewhere, the Defendant, Daniel Perez-Rojas, did unlawfully, knowingly, willfully, and intentionally combine, conspire, confederate and agree with other conspirators, both known and unknown, to distribute at least five (5) kilograms or more of cocaine, a Schedule II controlled substance, and one thousand (1,000) kilograms or more of a mixture and substance containing a detectable amount of marijuana, a

Schedule I controlled substance, intending and knowing that such substances would unlawfully be imported into the United States in violation of 21 U.S.C. §§ 959, 960(a)(3), 960(b)(1)(B)(ii), 960(b)(1)(G), and 963.

2.  During the course and in furtherance of the conspiracy, the Defendant was a high-ranking member of a drug-trafficking organization known as "Los Zetas." Los Zetas began as an armed wing of the Gulf Cartel that was comprised of former Mexican military members who maintained control of drug trafficking routes on behalf of the Gulf Cartel. The Gulf Cartel was a violent criminal organization, primarily based in Northeast Mexico, that was engaged in distributing and importing large quantities of cocaine and marijuana into the United States, among other illegal activities. Over time, Los Zetas developed their own drug trafficking sources and routes independent from those of the Gulf Cartel.

3.  Between 2000 and 2010, the Gulf Cartel and Los Zetas operated collectively under the name "The Company." The Company controlled hundreds of miles of Mexican territory along the border of Mexico and the United States. The Company divided its territory into areas known as "plazas" and assigned a leader, known as a "plaza boss." Using boats, planes, and motor vehicles, the Company transported large cocaine shipments from Colombia and Guatemala to various plazas in Mexico. It also transported large shipments from marijuana growing regions of Mexico to plazas along the border with the United States. The Company then used its control of strategic locations on the border—including Matamoros, Reynosa, and Nuevo Laredo, which border Brownsville, Hidalgo, and Laredo, Texas, respectively—to import tonnage quantities of cocaine and marijuana into the United States. As a member of the Los Zetas with increasingly senior roles, the Defendant's activities directly supported The Company's drug trafficking to and within Mexico and knowingly supported The Company's importation of drugs into the United

States.

4.    Before joining Los Zetas, the Defendant served in the Mexican military from approximately 1997 to 2001. During this time, the Defendant became a member of the "Grupo Aeromóvil de Fuerzas Especiales," or GAFE, a group of special forces soldiers with advanced training.

5.    In or around 2001, the Defendant was recruited to Los Zetas. At first, the Defendant provided security for Arturo Guzman Decena (also known as Z-1), the founder and leader of Los Zetas. In approximately 2002, the Defendant was arrested and sentenced to prison in Mexico, but other members of Los Zetas arranged for his escape from prison several months after his arrest.

6.    After his escape, the Defendant rose through the cartel's ranks, in part due to his personal connections to Heriberto Lazcano Lazcano (also known as Z-3), who took over as leader of Los Zetas after Guzman Decena's death in 2002. The Defendant became chief of Lazcano Lazcano's security, in which role he selected and supervised approximately thirty armed guards who provided personal security for Lazcano Lazcano. In this role, the Defendant also passed messages on behalf of Lazcano Lazcano to other cartel members to facilitate Los Zetas' drug trafficking and other illicit activities.

7.    In or around 2007, Lazcano Lazcano announced that he would be retiring and that the Defendant would take over leadership of Los Zetas. Lazcano Lazcano never, in fact, retired, and the Defendant continued to take direction from him.

8.    On or around October 5, 2007, Mexican law enforcement seized at least 10 metric tons of cocaine from a warehouse in Tampico, Tamaulipas, Mexico. This cocaine belonged to members of The Company and its associates, including the Defendant.

9.    In approximately early 2008, after paying millions of dollars in bribes to the

3

candidate who won Guatemala's presidential election, the Defendant and other members of Los Zetas traveled to Guatemala. While there, the Defendant and other members of Los Zetas met with several members of the Guatemalan government to discuss Los Zetas' planned expansion into Guatemala. The Defendant and other members of Los Zetas also met with leading Guatemalan drug traffickers to arrange supplies of cocaine for Los Zetas. The Defendant and other members of Los Zetas also arranged a meeting with Juan Jose "Juancho" Leon Ardon, a leading Guatemalan drug trafficker, in Zacapa, Guatemala. At the meeting, the Defendant and other members of Los Zetas killed Leon Ardon and several of his associates and bodyguards. Several weeks after the killing, the Defendant was arrested by Guatemalan authorities.

10. The Defendant regularly wore body armor and carried weapons, including semiautomatic weapons, when conducting business on behalf of Los Zetas. The Defendant also routinely used violence, or the threat of violence, on behalf of Los Zetas.

11. From when he joined Los Zetas in approximately 2001 to at least his arrest in 2008, the Defendant engaged in a pattern of criminal conduct as his livelihood. Criminal conduct was the Defendant's primary occupation, and he derived substantially all his income from such conduct.

12. The Defendant admits that the total amount of cocaine involved in this conspiracy for which he had actual knowledge and involvement was well over 450 kilograms, including the at least 10 metric tons of cocaine seized in Tampico in October 2007.

13. The Defendant admits that he was aware that at least five kilograms or more of the cocaine and at least 1,000 kilograms of more of the marijuana involved in the conspiracy was going to be illegally imported into the United States for further distribution.

14. The Defendant agrees venue lies with this Court pursuant to 18 U.S.C. § 3238.

4

15.    The Defendant also agrees that his participation as a conspirator in the above-described acts was in all respects knowing, intentional, and willful, reflecting an intention and deliberation to do something the law forbids, and was not in any way the product of any accident, mistake of law or fact, duress, entrapment, or public authority.

16.    With his signature below and that of his counsel, the Defendant agrees that he has fully adopted this statement of facts as his own statement.  The Defendant is adopting this statement of facts because it is a true and correct summary of the Defendant's own conduct.

17.    The Defendant is pleading guilty because the Defendant is in fact guilty.

Respectfully submitted,

MARGARET A. MOESER
Chief
Money Laundering, Narcotics
and Forfeiture Section
Criminal Division
U.S. Department of Justice

Date: 4/22/2026    By: _____ (EC)
For D. HUNTER SMITH
Trial Attorney

Approved by:

Date: 4/22/2026    By: _____ (EC)
For KAITLIN J. SAHNI
Acting Unit Chief
Narcotic and Dangerous Drug Unit

## DEFENDANT'S ACKNOWLEDGMENT

I have reviewed this Statement of Facts with the assistance of an English-Spanish interpreter, and have discussed it at length with my attorney, Michael Lawlor, Esq. This Statement of Facts has been translated into Spanish for me. I understand that the English version controls. I fully understand this Statement of Facts and agree to it without reservation. I do this voluntarily and of my own free will, intending to be legally bound. No threats have been made to me, nor am I under the influence of anything that could impede my ability to understand this Statement of Facts fully.

I reaffirm that absolutely no promises, agreements, understandings, or conditions have been made or entered into in connection with my decision to plead guilty except those set forth in the accompanying Plea Agreement dated April 9, 2026. I am satisfied with the legal services provided by my attorney in connection with this Statement of Facts, the accompanying Plea Agreement, and all matters related to it.

_____
DANIEL PEREZ ROJAS
Defendant

_4/22/26_____
Date

## ATTORNEY'S ACKNOWLEDGMENT

I am the Defendant's attorney. I have fully explained to the Defendant, through an English-Spanish interpreter, the Defendant's rights and the applicable provisions of the Sentencing Guidelines. I have carefully reviewed every part of this Statement of Facts with the Defendant. The Defendant is agreeing to this Statement of Facts voluntarily, intelligently, and with full knowledge of all consequences of the Defendant's plea of guilty.

_____
MICHAEL LAWLOR, ESQ.
Attorney for Defendant

_4/22/26_____
Date

6